There are two cases being submitted on the briefs, namely Appeal No. 06-7035, Furnished v. Department of Veterans Affairs, and Appeal No. 06-3125, Powell v. Department of Justice. Before taking up the argument calendar, there are two preliminary pieces of business. The second is a motion for admission to the Bar of this Court, but the first is just a historical note that I want to recognize the fact that this panel, which, like all our panels, is drawn at random by the computer, happens to consist of three judges who are or were chief judges of this Court or the predecessor Court of Claims. So you have an all-chief judges panel. On the motion, I'm going to be the movant, and so Judge Mayer will preside. May it please the Court, I move the admission of Claudia L. Davis, who is a member of the Bar in good standing of the highest court of the State of New York. I have personal knowledge of her credentials because she has been one of my three law clerks for nearly a year now, and I work with her on a daily basis. On the basis of that experience, I am satisfied that she possesses the necessary qualifications for admission to the Bar of this Court, and I so move. Thank you, Chief Judge Michelle. Your motion is granted. Please step forward and face the clerk. She's raised her right hand. Do you solemnly swear or affirm that you will comport yourself as an attorney and consular of this Court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Congratulations. And on behalf of the Chief Judge and the other judges on the Court, let me congratulate you and welcome you to the Bar of the Court. We hope to see you back at the Court from time to time and social functions, and the fewer times you appear in court, the better. On the argument calendar, the first case for argument is Appeal Number 05-1060, Automotive Technologies v. Delphi. But preliminarily, there are two matters before we'll hear from Mr. Baniak. The first is that there's a motion for three demonstratives to be admitted. It's the understanding of the panel that the motion is objected to in part because it is late and perhaps also because, as I understand it, the device was not part of the summary judgment record. And so the panel has decided to deny the motion. Of course, as to the patent language, we have the language in the papers before us. And as to the device, we have various indications of what it looks like and how it works in the same paper. So the motion to use the three demonstratives is denied. Secondly, there is a cross appeal, including a gray brief of the appellee. And from the examination of the cross appeal and the relief requested, it seems clear to the panel that no part of the judgment is sought to be amended by the cross appeal. And therefore, we rule that the cross appeal is out of order. So the second gray brief, the appellee's gray brief, will be ignored, and the argument time will be adjusted so that there will be no rebuttal time. But you'll have the full 15 minutes, Mr. Forbus, for your appellee argument in defense of the judgment. And now we're ready to hear from Mr. Beniak. Welcome. Good morning. Please proceed. Good morning, Your Honors. I'm going to approach Claim 10 initially. The district court defined the invention broadly, but the district court did not define the invention broadly enough in view of the specification and in view of the claim language itself. Actual position, which the district court inserted into this language, relative to an airbag door, has no business in this claim and is not required for occupant position determination in Claim 10. Occupant position determination is to be done in part by weight, and we'll keep that in mind as we go through here. The invention as claimed and properly construed is more broad than what the district court said. And I think what happened is the district court got lost in some of the other embodiments of the invention, not just position determination, but weight distribution. And that weight distribution analysis that the court did seem to carry over into not only Claim 10, but also in Claims 2 and 6, which are up on appeal. We have a spectrum here. Before, and put the invention in perspective, before this invention, either your airbag went on or it didn't in a crash. Now it was determined that that was not necessarily a good thing to happen because you could be out of position relative to that airbag actuation. So the inventors came up with many ways to discriminate from a very, very broad, gross type of determination of position, position, to decide in some circumstances to deploy or not to deploy. And that's what's on appeal here. That's what Claim 10 is directed to from a positional standpoint. Do we or do not actuate the airbag in some circumstances? Yeah, but that's not in the claim language. The claim language that seems to be central here is the language about determining the position of the occupant. Yes, and I totally agree with you, Your Honor, on that. And you see nothing in there that is being determined relative to anything in particular, relative to an airbag door or relative to anything else. What it is being determined is relative to where the occupant was previously sitting. Keep in mind that the infringing device, the pod system, constantly checks one one-hundredth of a second. It's checking to see where you are. So Your Honor, for example, leans toward me. Well, I'm not worried about how these things can work or what the accused device does. I'm trying to focus on whether the district judge erred in construing the word position in its normal sense as being relative to some fixed point of reference. I don't see anything on the face of it wrong with saying that the position of the occupant of the seat has to be determined relative to something. And the airbag door seemed like a perfectly appropriate reference point to me. Where's the problem in that? The problem is, Your Honor, that the invention is far broader than that. And throughout the specification… Well, we're not talking about the invention. We're talking about one claim with specific phraseology in it. That's the phraseology that was construed. And it's hard for me to see what is way off about that. What is erroneous? What is illogical? What is silly? What is unreasonable about saying determining the position means the position relative to the airbag door? Particularly since the whole purpose of this invention is to make sure that when the door opens and the bag comes out that the person is in a safe position, relatively safe, and therefore that if it's turned around, the door won't open. So, I mean, it's meaningful only in terms of where the bag is coming out. You look at Claim 10, Your Honor, and there's nothing with relationship to a bag coming out of there at all. It's a positional situation with regard to doing something. Now, one thing, and one thing in point because of the… But that's important. There may be nothing in the claim language itself with regard to the airbag. But certainly the specification makes crystal clear what the purpose of this invention is, doesn't it? It does. But we have to look at it more broadly than just the deployment of an airbag. And, for example, to get to your point, Your Honor, the actual position is too precise. The court has injected too much precision into what is otherwise a very, very, very broad claim and a broad perspective on the invention. Because as I was saying, as you move forward… The court didn't say anything about precision. It didn't say that determine the position means determine the position within one-tenth of an inch. Nothing like that was said at all. The court's construction simply said that determining the position meant to show the alignment of the body of the occupant of the seat by reference to the location of the airbag door. I still don't see what's illogical or foolish or erroneous about that. The problem with that construction, Your Honor, is that you don't need to know the exact position, the actual position of the occupant of the seat, to, in certain circumstances, determine whether I deploy or don't deploy the airbag. Because I put a transducer in your seat, you lean toward me. I know what your weight was to begin with. As you lean and put your elbows onto the podium in front of you, you have changed your weight. You go below a certain threshold. I know that that is a dangerous condition. I don't need to know your actual position. All I need to know is you've gone below a threshold. That may be, but that's just the goal of the invention. I'm trying to understand the meaning of language chosen by the inventor for this particular claim, one of many claims in the past. And what I'm describing to you is a scenario where you do not need to know why the individual moved. But that just tells me that he could have used different language and still captured invention. It doesn't tell me why the district judge's construction of the phrase determine the position is wrong. Well, it gets down to the use of the word actually, Your Honor. And the way that the court ends up applying that word to the infringing product is to make it very positionally accurate. I need to know precisely where you're going to be. That's the problem that we've been having with this construction. The reality of the claim is, and the words that are actually used in the claim and what the specification describes, is something far broader than I need to know that you are leaning out of the car with your head in the wind. I don't even know that. But the specification speaks to all the claims. It does. So how it relates to other claims isn't important. It's only how it relates to the language chosen by the inventor here. And what we're saying, Your Honor, is this is a relative position, and that's the language that we cited to in the specification with regard to a position, the beneficial effects thereof where the occupant can attain the restraining effects of the occupant protection apparatus. It's a little wordy, but it gets to the concept that what we're dealing with is a relative positioning of the occupant, not an actual position. Well, I don't understand what you mean, relative position. The claim says position, and with respect to what item, if any, do you think the position should be determined? No reference point at all? No, Your Honor. I think there should be a reference point, but I think the reference point is a relative one, and that's why I've chosen those words very carefully. I don't know what you mean by a relative. You mean it varies from moment to moment? Exactly. I can tell where you're sitting right now. I can also tell when you've moved outside of the range, which is unacceptable. That's what this claim is directed to. I can tell when you've moved your position, but I don't need to know where your actual position is relative to anything other than where you were before, and that is the broadest and the interpretation that should be given to this particular claim. There's been no disavowal otherwise. Do I understand you to say that you think it should be relative to the position occupied immediately before? Yes, Your Honor, exactly, and I think that's what this invention expresses. So it keeps changing as the car is driving along, because as I'm steering, if I steer to the right, I may move my body slightly. That's right, and in an embodiment of the infringing device, that is what happens. It detects there's changes, and then if it goes below a certain threshold, then it indicates that there's a problem. The bag should not actuate. I do want to touch on one more thing since I have some rebuttal time, too, and that is Claims 2 and 6. If you go back, and the only reason these claims have been found invalid is because the court determined that there was no priority to the 707 patent. You look at those claims. It is identical between Figure 5 in the 707 parent patent and Figure 12. You find two containers, as expressed in the 707. The judge concluded that those two containers were chambers that met the definition, that met what was in Claims 2 and Claims 6. Yeah, but he said they're not in different locations on the seat. Ah, but they are, and I was thinking of this yesterday. I was at the airport. I was eating a nectarine, all right? I eat that nectarine. There's a pit in the middle of that nectarine. That is clearly in a different position from the fruit that I'm eating around it. Otherwise, I would crack a tooth biting into it. The judge was not thinking in terms of what could be three-dimensional, shall we say, a three-dimensional concept. Yeah, but what he found to be new matter in the patent that's being asserted here was the location in four quadrants of the seat of these separate containers with separate transducers to reflect weight or pressure. And the judge was looking for something like that in the 707 patent. Well, why isn't that perfectly correct? It's not perfectly correct, Your Honor, because there are two chambers as the court construed the Figure 12. But the problem I have with that is that on page 10 of the red brief, they quote from the specification in the 504 patent in which the patentee describes Figure 12, which we agree is identical to Figure 5 in the 707 patent, as having a single chamber. And then they show in 12A the four chambers. So having the patentee himself having construed Figure 12 or Figure 5 as showing a single chamber, on what theory do you say the district court should have recognized that that contained two chambers? Because the applicant, the patentee, was saying, I am talking about a single bladder that's located in 518 or 515, a single bladder. It did not say that I don't have two chambers, which is exactly what's shown in 518 and 515 in the 707 parent. Well, wait a minute. The first sentence of that in the specification says, in Figure 12, the air bag or bladder 515, which interacts with the occupant, is shown with a single chamber. That's right. It is. But it doesn't say anything about 518, does it, Your Honor? That's the other chamber. And then it contrasts it with Figure 12A, which is composed of multiple chambers. That's correct. And yet, I take it you're saying despite that, Figure 12 shows multiple chambers? Figure 12 shows multiple chambers because there are two chambers. They interact. Fluid goes back and forth between them. That's how they work. That was in the 707. It seemed to me if what was intended was that the portion of whatever you want to call the container, the inner portion was a separate chamber from the outer portion, one would have drafted that to say that the second chamber is within the first chamber. They are shown that way, and the applicant used the container and chamber. But that's not what the claim says. Well, the claim, Your Honor, is shown specifically. Look at the words of the claim. You can find every element of that claim in the 707, Figure 5. It's all there. What's the strongest evidence that an ordinary artisan in this field, looking just at the figure in the 707 patent, would say that it discloses what Figure 12A in the asserted 504 patent claims? Two chambers shown in the 707 patent. No, no, no. What evidence? That's the evidence, Your Honor. There it is, looking at it. We also have a declaration. I can't look at it. I'm not an auto seat designer. I can't look at the figure in the earlier patent and say whether it describes and enables the later invention. Unrebutted declaration of an expert that we submitted, Roland Dix, who said that's exactly what it shows, two chambers, two containers. What page? What language? Look through all these briefs for the actual critical evidence that couldn't ever find it. Well, Your Honor, that is in the declaration of Roland Dix, and I believe we've cited it in our principal brief. I can find that, and I'll come back to you with that answer when I have a rebuttal. Very good. And you have a minute and a half of rebuttal remaining. Thank you, Your Honor. Thank you, Mr. Paniak. Mr. Forbus. Good morning, Your Honor. My name is Glen Forbus. I represent Delphi in this case. I'll address Claim 10 first since that's been addressed first by my opponent. The patent in Claim 10 talks about determining the position of the occupant of the seat. The POTSB doesn't do anything like that. The POTSB is to classify an occupant as an adult or a child. It's not concerned with position. I thought that the infringement issue is, in effect, conceded by Mr. Paniak if the judge's claim construction stands and that the attack was on the claim construction itself. So if that's right, then for you to discuss how the accused device works doesn't really advance the ball because he agrees that if the claim construction stands, so does the judgment. Okay, Your Honor. My point, we'll hit the claim construction first, then. Position of the occupant, those are the words of the claim. It doesn't say determining if the occupant is out of position. Out of position is a term of art that was used in the patent specification. It has a defined definition with it. It talks about determining if the person is out of position. What's your answer to his specific argument that the relative aspect of determining position of the occupant is time? What you're looking for is what's his position now versus what his position was half a second ago, rather than relative to a fixed reference point in the car such as the airbag door. Your Honor, there's no teaching whatsoever in this patent that determining position means relative to a prior position. This patent discusses determining the position of the occupant using a weight sensor plus other sensors like ultrasonic sensors. Well, he gives the example that if he's the passenger in the car and he's seated squarely in the passenger seat, a certain weight will register and that if he then half a second later leans forward, the weight registration will reduce and that this will signal a change in position that's important to whether the airbag can safely deploy or not. What's your answer to that?  The first answer is this. In terms of claim construction, there's nothing in this patent that would support such a claim construction. But now what you're going to is the infringement question because you're asking about how does the pod system work. No, no, no. I'm asking about how the claimed system works because that's what ought to inform how the words of the claim are construed. Your Honor, this court in the Phillips case has said look at the patent specification. We know what we've said in those cases. The patent specification discusses determining the position of the occupant. It uses the terms relative to an airbag and we've said that in our brief. It's relative to something, to a fixed point. The concern here is are you too close to the airbag or you're not too close to the airbag in this patent. When you're determining the position, it's not about where you were last. And that's all I can say. There's nothing in the patent specification that would support this. Does the specification explicitly state the position of the occupant is to be determined with respect to a fixed position? Those words are not used but here's what is used, Your Honor. And I'm quoting from the specification. It talks about sensors being used to determine where the occupant is in the seat. And it says this along with the location of the occupant relative to the airbag is then to be used to determine the amount of gas which is to be injected into the airbag during deployment. It uses the phrase relative to the airbag in the specification. Furthermore, the inventors testified that that's the proper definition in deposition. We cited that in our briefs. And their own experts said that's precisely the definition to use. And I quote Dr. Dix. It sounds like you're talking about the operational pressure of the airbag varying according to the position of the occupant. That's one aspect of it. But opposing counsel is arguing that the critical function here is deploy versus don't deploy. And if the passenger is leaning very close to the dashboard, there's danger if you do deploy. And, therefore, you want to prevent deployment if the passenger is in that posture but allow deployment if the passenger is in a more upright posture. Fair enough. And if that's the object, that is precisely the definition that the court gave it and that we're proposing, which is determining the position of that occupant relative to a fixed point. That is the airbag door. There's no suggestion here in the patent that all you're determining is were you sitting one inch closer or one inch further away. No, no, no. That's perfectly true. And we agree that the relationship between the airbag door and the face of the passenger is obviously very important. That's the whole safety dilemma here. If the face is too close to the airbag, a person could get a broken nose or broken neck or something perhaps like that. But the problem is if I'm sitting in the seat and the weight registers my full 170 pounds and then all of a sudden the weight registration drops down to 100 pounds, that would seem to be a signal that I've leaned way forward and, therefore, I'm in danger of being too close to the door. So why isn't Mr. Baniak's definition of relative position over time have some sense to it? Your Honor, go back to the specification. The specification... No, no. Don't go back to the specification. Answer my question. If it registers my full 170 and suddenly it drops to 100, doesn't that suggest I've leaned forward and, therefore, the bag shouldn't deploy? No, it doesn't. It could mean a number of things. If you've got a single pressure transducer that's measuring the pressure in the bladder, the change in weight could be due to a number of things. The person could be leaning on their armrest, not leaning forward. The person could have reclined the back of the seat back and less weight now is on the pressure bladder. The person could have lifted himself off the seat but is still in the same position relative to the airbag. Yeah, but the Claim 10 allows for that by saying that based in part on the weight of the occupant. So the claim acknowledges that there are other things you have to consider. Sure. Absolutely. But that relative weight over time would be one of them, according to Mr. Baniak. And I don't see that you've shown that that's silly. Well, Your Honor, there is nothing. It says determining the position of the occupant based upon the weight sensing device. Okay? Determining the position, it's impossible to determine the position of the occupant based upon a pressure reading alone. There's no possibility to do that with a weight sensor and a single transducer alone. Yeah, but the claim doesn't say alone. It says at least in part on the determined weight of the occupant. That's the exact language at the conclusion of Claim 10. Yes, Your Honor. If we're going to extrapolate position to mean beyond the scope of the specification, beyond the scope of the claims, we could construe it to basically be anything. But the specification limits position. Well, he didn't suggest it could mean anything. He suggested very specifically that it would mean relative to what the position was a split second earlier. Well, let me just conclude this, Your Honor. I think that that's attorney argument. There's nothing in the specification. There's nothing in the normal ordinary meaning of the word. There's nothing in any of this patent that would suggest that that was the definition except for what has been argued by the attorneys. We've spent a lot of time on claim construction of position, but let me just say this. I think all of this claim construction issue on position is in effect a red herring because the pod system doesn't have anything to do with determining the position of the occupant, even if it was from one point to the next. The pod system classifies an occupant as an adult or a child based upon that weight, irrespective of position, without regard to position, and ignoring position. That's the government regulations. That's what the pod system is required to do. It wants to know is that an adult sitting in the seat or is it a child? Because it doesn't care where that person is sitting. The pod system doesn't. Where that person is sitting, all it cares about is do I have a child or do I have a small adult. But doesn't the pod system continuously or with high frequency, I more precisely should say, measure the weight? It does continuously measure the pressure. The reason? And that corresponds to the effective weight of the occupant. It could be calculated from that, although it isn't. But, yes, it's continuously measuring the pressure. Why? Because it wants to make sure that the person isn't getting out of the seat and getting into the back seat or changing drivers or what have you. That's why it's continuously measuring. But it does not determine position at all. But my point is if his definitions were correct, then it seems to me that would cast great doubt on what you're saying, that your system clearly couldn't infringe in any event under any construction. It looks to me like if we accepted his construction, then maybe we shouldn't. But if we did, it looks to me like it might be a pretty close issue whether the pod system infringes. Absolutely not, Your Honor. In the specification, as you said, and as the inventor said, you can't determine position from a single bladder, a single pressure transducer. And you yourself said the specification contemplates other types of sensors to determine position. There's nothing else in the pod system. There's no other sensors. There's nothing else that would be used to determine the position, even given Mr. Bainiak's definition of position. Let me spend the last few minutes. The Claim 10, the claim that we're discussing, doesn't require that there be other things. It requires the opposite. It requires that weight be one thing, but it doesn't require that there be a second thing and a third thing and a fourth thing. But it does require that you determine the position. And even if you did accept Mr. Bainiak's definition of position, of being relative from one time to the next, there's no suggestion that anywhere in the patent or, in fact, in reality, that a single measurement of a single—multiple measurements over time of a single bladder, single chamber bladder, could possibly give you the position, even from one point to the next, because all you know is that the pressure is changing. You don't know why. You don't know how they're changing it, where they're going. There's many, many different positions that could account for that pressure change. Let me move on to Claims 2 and 6 with my remaining time, Your Honor. The question here in Claims 2 and 6 is priority. Were the inventors in possession of the concept of multiple chambers in a bladder to determine the weight of the occupant of a seat? That's what Claims 2 and 6 are directed to. They weren't. They were not in possession of that concept at all. The 707 patent never uses the word chambers or bladders at all. The 707 patent never uses those words. We're relying solely upon Figure 5. Figure 5 is a system for adjusting the seat stiffness. It has an outer container, 515, and an inner container, 518. Very different than what they call— It's not disputable what Figure 5 in the earlier patent shows. We have it on paper. It's in black and white. We can look at it. He's, in effect, arguing, I think, that when an artisan looks at it, he sees more in it than I, as a generalist judge, might see in it. And he says his witness so corroborates that an artisan would see more in it. Now, do you have some witness on your summary judgment papers who said, no, no, no, we artisans wouldn't see anything of the kind? What we would see is something totally different. What we would see is X and Y and Z. We have that, Your Honor, and better yet— Well, what's your best citation to your best testimony? I asked him that, and he's going to give it to me on rebuttal. Our best citation is the inventors themselves. No, no, but, I mean, what precise evidentiary text are you relying on? In the 504— What line of what deposition is your strongest evidence? Our strongest evidence is what the inventors said they had in their possession in the 707 patent when they filed the 504. Wait a minute, never mind talking about having their possession. Did the inventor ever state that figure 5 shows only a single black line? Absolutely. In the 504 patent, and I'll quote to you, it's at the appendix 111, column 29, lines 20 through 21 of the patent. I'm familiar with that, but my question to you is, did you have either an affidavit or any testimonial statement by the inventor that says that figure 5 of the 707 patent or figure 12 of the 504 patent contains only a single chamber? Well, certainly not, Your Honor, because by the time we get to litigation, those statements aren't available. The answer, really, to Judge Michel's question, the answer is there's no specific testimony or no specific affidavit so stating, but you rely on the fact that in the specification of the 504 patent, it characterizes figure 12, which is the same as figure 5 of the 707 patent, as containing a single chamber and then contrasts it with 12A showing the four squares and saying that's multiple chambers. That's true, Your Honor, and I have to say that it's part of the public record. It's what a skilled artisan would look at. It's the inventor's own words. I don't know how else you can get to a more clear definition of what they had in their possessions than the inventors themselves saying figure 12, which is figure 5 of the 707, the airbag or bladder 515, which interacts with the occupant, is shown with a single chamber. Those are the words of the inventors in their own patent. How you get past that, their own admissions, I don't know, but it is consistent with the rest of the evidence, too. If you look at the progression of these patents, the 707 patent is filed with no reference to bladder, no reference to chamber. All right. Time has expired, Mr. Forbus. Thank you very much. Thank you, Your Honor. Mr. Baniak, you have a minute and a half for rebuttal. Thank you, Your Honor. With respect to the declaration of Roland Dix, the expert that we submitted that says, yes, an artisan would be able to find in the 707 patent exactly what we're looking for, that is at Appendix A-2024, paragraphs 16, 19, 20, again at page A-2031. We cited that in our opening brief at pages 31 and 35, setting forth that the skilled artisan would go back, find two containers, two chambers in the 707 disclosure. They have to be there because there's interaction between the two chambers, which are in different locations, as I described with my nectarine analogy. Also, look at- But that isn't dispositive, is it, that affidavit? That's purely- That's the only evidence. It's unrebutted. This is construction, isn't it? Are we trying to construe what's there? Yes. We are trying to. That's your job, I guess, at this stage is to say what the answer is. Well, this Court has said it's a matter of law, so anything that you're submitting, we're talking about evidence of this and evidence of that, this evidence is purely, this Court has said, for educational purposes. Well, I don't know- To be accepted or not, he didn't accept it, and as a result, it is a perfectly reasonable decision. The question of priority is a question of law, Your Honor, which is based on factual findings. So in this case- This is construction, what you're arguing right here. That's right, and we have a factual evidentiary record which is unrebutted in the Dix Declaration. I would say that because we're dealing with the clear and convincing- The factual underlying record for plain construction is irrelevant, this Court has said. I don't believe that's true, Your Honor. Well, that's what they said. Clear and convincing, we need clear and convincing evidence to show that there's no priority. That's the Chiron case, and accordingly, I don't see that there was clear and convincing evidence to show that this was non-enabling. The only evidence is the Dix Declaration, so there was clear error in deciding that there was no priority here. And so far as infringement is concerned, in addressing the counsel's argument on that and the POD system, I would urge this Court to look at Appendix page 2421, and I believe that categorically shows how this POD system does indeed meet the limitations of Claim 10, and if that's not dispositive of itself, we certainly have issues of material fact, as I believe this Court has already recognized, which means summary judgment should not have been granted, and this should go back to the Court below with respect to at least Claim 10 and those issues of fact. Thank you. We thank both counsel. We'll take the case under advisement. The next argument is in Appeal No. 05-7113.